UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **JAMES BRITT, ET AL.,**<br>    **Plaintiffs** | **CIVIL ACTION** |
| **VERSUS** | **NO. 24-2746 c/w**<br>           **24-2905, 25-531** |
| **OLD DOMINION FREIGHT LINE, INC., ET AL.,**<br>    **Defendants** | **SECTION: "E"(3)** |

*Applies to: 24-2746, 25-531*

## ORDER AND REASONS

Before the Court is a motion for summary judgment filed by Defendants, Clifford Williams ("Williams") and Old Dominion Freight Line, Inc. (collectively referred to as "Defendants").[1] Defendants seek summary judgment in their favor and against Shavonne Latimore ("Latimore") because her claims are prescribed. Latimore filed an opposition to the motion.[2] Subsequent to this Court's order,[3] Latimore filed an amended opposition[4] to Defendants' statements of material facts.[5] Defendants filed a reply.[6]

## BACKGROUND

### I.    Factual Background

This case arises out of a three-car accident that occurred on I-55 in Tangipahoa Parish, Louisiana.[7] Latimore alleges that on September 2, 2023, she was driving a Kia

---

[1] R. Doc. 34 (24-2746).
[2] R. Doc. 37 (24-2746).
[3] R. Doc. 41 (24-2746).
[4] R. Doc. 42 (24-2746).
[5] R. Doc. 34-3 (24-2746).
[6] R. Doc. 43 (24-2746).
[7] R. Doc. 1-2, p. 2 (25-531).

1

Optima in the right lane of I-55 heading south when her "vehicle became disabled and her vehicle came to a complete stop in the right hand lane of travel."[8]

Latimore alleges that, when her vehicle stopped, she activated her emergency signals, enabling the car directly behind hers to "come to a complete stop behind [her] vehicle."[9] Latimore further alleges that Williams, "who was negligently operating a 2019 Freightliner, behind the vehicle traveling directly behind [her], as a result of being inattentive and following too closely, failed to stop in time to avoid the vehicle immediately behind" her.[10] Latimore avers that Williams "made contact with the middle vehicle, which impact caused the middle vehicle to crash into" her vehicle.[11] Latimore alleges that the accident "was a direct result of [Defendants'] negligence."[12]

Latimore asserts negligence claims against Williams for "[f]ailing to maintain control of his vehicle;" "[d]riving in a careless and reckless manner;" "[f]ailing to keep a proper lookout/being inattentive;" "[f]ollowing too closely;" "[f]ailing to see what should have been seen;" "[f]ailing to act with the required degree of care commensurate with existing driving conditions;" "[s]triking the vehicle directly behind Petitioner from the rear;" and "[a]ny and all other acts of negligence, which may be proven at the trial of this matter."[13]

Latimore asserts negligence claims against Old Dominion Freight Line, Inc. for "[f]ailing to properly train Defendant Driver;" "[f]ailing to properly supervise Defendant

---

[8] *Id.*
[9] *Id.*
[10] *Id.*
[11] *Id.*
[12] *Id.*
[13] *Id.* at p. 3.

2

Driver;" and "[a]ny and all other acts of negligence, which may be proven at the trial of this matter."[14]

Latimore avers she has sustained several damages, including "[p]ast, present and future physical pain and suffering;" "[p]ast, present and future mental pain and anguish;" "[p]past, present and future medical expenses;" "[l]oss of enjoyment of life;" "[d]amages to her personal property;" and "[a]ny and all other damages which may be proven at the trial of this matter."[15]

## II. Procedural Background

On July 30, 2024 (approximately two months before Latimore filed suit), James Britt ("Britt") and Kelly Budd ("Budd"), the driver and passenger of the middle car involved in the accident described above, sued Old Dominion Freight Line, Inc., Ace American Insurance Company, Clifford Williams, and ABC Insurance Co. *in solido*[16] for negligence damages[17] in the 21st Judicial District Court for the Parish of Tangipahoa.[18] Defendants removed the action to this Court on November 25, 2024.[19]

On September 20, 2024, Latimore filed suit against Clifford Williams and Old Dominion Freight Line, Inc. in the 21st Judicial District Court for the Parish of Tangipahoa.[20] Defendants removed the action to this Court on March 18, 2025.[21]

---

[14] *Id.*
[15] *Id.* at p. 4.
[16] R. Doc. 2-2, p. 1 (24-2746).
[17] *Id.* at p. 2.
[18] *See generally id.*
[19] R. Doc. 2 (24-2746).
[20] R. Doc 1-2 (25-531). Latimore initiated the fax-filing of her petition on August 27, 2024, but it was not stamped by the Clerk's office as filed until September 20, 2024 due to no receipt of originals.
[21] R. Doc. 1. (25-531).

3

On March 24, 2025, Latimore moved this Court for leave to file an amended complaint,[22] which was followed by an opposition by Defendants[23] and a reply by Latimore.[24] On April 7, 2025, the magistrate judge granted Latimore's motion for leave to amend her complaint,[25] and Latimore filed her first amended complaint that same day.[26] On April 15, 2025, Defendants answered the amended complaint[27] and moved for summary judgment due to Latimore's claims being prescribed.[28]

On April 23, 2025, the Britt action and the Latimore action were consolidated.[29]

On April 24, 2025, Latimore moved this Court for leave to file a cross claim against her co-defendants Clifford Williams, Old Dominion Freight Line Inc., and Ace American Insurance Company in the consolidated action,[30] which this Court granted in its April 25, 2025 Order.[31] On May 12, 2025, the Court granted Britt leave to file a second amended complaint to properly allege the citizenship of EAN Holdings, LLC.[32]

On April 24, 2025, Defendants filed their motion for summary judgment arguing Latimore's claims are prescribed.[33] Latimore opposed the motion for summary judgment[34] and Defendants replied.[35]

---

[22] R. Doc. 10 (25-531).
[23] R. Doc. 12 (25-531).
[24] R. Doc. 14 (25-531).
[25] R. Doc. 15 (25-531).
[26] R. Doc. 16 (25-531).
[27] R. Doc. 20 (25-531).
[28] R. Doc. 21 (25-531)
[29] R. Doc. 32 (minute entry) (24-2746). Prior to this consolidation, the Britt matter was already consolidated with another case involving the same accident and the same parties.
[30] R. Doc. 35 (24-2746).
[31] R. Doc. 38 (24-2746).
[32] R. Doc. 46 (24-2746).
[33] R. Doc. 34 (24-2746).
[34] R. Doc. 37 (24-2746).
[35] R. Doc. 43 (24-2746).

## **LEGAL STANDARD**

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[36] "An issue is material if its resolution could affect the outcome of the action."[37] When assessing whether a material factual dispute exists, the Court considers "all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence."[38] All reasonable inferences are drawn in favor of the nonmoving party.[39] There is no genuine issue of material fact if, even viewing the evidence in the light most favorable to the nonmoving party, no reasonable trier of fact could find for the nonmoving party, thus entitling the moving party to judgment as a matter of law.[40]

If the dispositive issue is one for which the moving party will bear the burden of persuasion at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'"[41] If the moving party fails to carry this burden, the motion must be denied. If the moving party successfully carries this burden, the burden of production then shifts to the nonmoving party to direct the Court's attention to something in the pleadings or other evidence in the record setting forth specific facts sufficient to establish that a genuine issue of material fact does indeed exist.[42]

---

[36] FED. R. CIV. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).
[37] *DIRECTV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2005).
[38] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008); *see also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150-51 (2000).
[39] *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).
[40] *Smith v. Amedisys, Inc.*, 298 F.3d 434, 440 (5th Cir. 2002).
[41] *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263-64 (5th Cir. 1991) (quoting *Golden Rule Ins. Co. v. Lease*, 755 F. Supp. 948, 951 (D. Colo. 1991)).
[42] *Celotex*, 477 U.S. at 322-24.

On the other hand, if the dispositive issue is one on which the nonmoving party will bear the burden of persuasion at trial, the moving party may satisfy its burden of production by either (1) submitting affirmative evidence that negates an essential element of the nonmovant's claim, or (2) demonstrating there is no evidence in the record to establish an essential element of the nonmovant's claim.[43] When proceeding under the first option, if the nonmoving party cannot muster sufficient evidence to dispute the movant's contention that there are no disputed facts, a trial would be useless, and the moving party is entitled to summary judgment as a matter of law.[44] When, however, the movant is proceeding under the second option and is seeking summary judgment on the ground that the nonmovant has no evidence to establish an essential element of the claim, the nonmoving party may defeat a motion for summary judgment by "calling the Court's attention to supporting evidence already in the record that was overlooked or ignored by the moving party."[45] Under either scenario, the burden then shifts back to the movant to demonstrate the inadequacy of the evidence relied upon by the nonmovant.[46] If the movant meets this burden, "the burden of production shifts [back again] to the nonmoving party, who must either (1) rehabilitate the evidence attacked in the moving party's papers, (2) produce additional evidence showing the existence of a genuine issue

---

[43] *Id.* at 331-32 (Brennan, J., dissenting); *see also St. Amant v. Benoit*, 806 F.2d 1294, 1297 (5th Cir. 1987) (citing Justice Brennan's statement of the summary judgment standard in *Celotex*, 477 U.S. at 322-24, and requiring the Movers to submit affirmative evidence to negate an essential element of the nonmovant's claim or, alternatively, demonstrate the nonmovant's evidence is insufficient to establish an essential element); *Fano v. O'Neill*, 806 F.2d 1262, 1266 (5th Cir. 1987) (citing Justice Brennan's dissent in *Celotex*, and requiring the movant to make an affirmative presentation to negate the nonmovant's claims on summary judgment); 10A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 2727.1 (2016) ("Although the Court issued a five-to-four decision, the majority and dissent both agreed as to how the summary-judgment burden of proof operates; they disagreed as to how the standard was applied to the facts of the case." (internal citations omitted)).
[44] *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1980); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986).
[45] *Celotex*, 477 U.S. at 332-33.
[46] *Id.*

6

for trial as provided in Rule 56(e), or (3) submit an affidavit explaining why further discovery is necessary as provided in Rule 56(f)."[47] "Summary judgment should be granted if the nonmoving party fails to respond in one or more of these ways, or if, after the nonmoving party responds, the court determines that the moving party has met its ultimate burden of persuading the court that there is no genuine issue of material fact for trial."[48]

Still, "unsubstantiated assertions are not competent summary judgment evidence. The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports the claim. 'Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment.'"[49]

## **UNDISPUTED FACTS**

The following facts are undisputed. Latimore seeks damages from the Defendants for injuries allegedly sustained as a result of a car accident.[50] The car accident occurred on September 2, 2023.[51] Latimore retained current counsel on October 23, 2023.[52] On September 20, 2024, Latimore filed her Petition for Damages.[53] Defendants have not made any "unconditional payments or promises to pay [Latimore] on her claims."[54]

---

[47] *Id.* at 332-33 & n.3.
[48] *Id.*; *see also First Nat'l Bank of Ariz.*, 391 U.S. at 289.
[49] *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (first citing *Celotex*, 477 U.S. at 324; then *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994); then quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir. 1992)).
[50] R. Doc. 34-3, p. 1 (24-2746).
[51] *Id.* ¶ 1 (citing Exhibit "A" to Memorandum in Support of Motion, Latimore's Petition for Damages).
[52] *Id.* ¶ 2 (citing R. Doc. 10-2, p. 6, Plaintiff's Memorandum in Support of Motion for Leave).
[53] *Id.* ¶ 3 (citing Exhibit "A" to Petition and Clerk's filing stamp on top of first page).
[54] *Id.* ¶ 8.

## **DISPUTED FACTS**

Defendants state it is an undisputed fact that "[Latimore]'s Petition for Damages is prescribed on its face."[55] Latimore disputes this for three reasons.

First, Latimore states that her Petition is not facially prescribed because the prescriptive period was interrupted when Louisiana Civil Code article 3492 was repealed and replaced with Act No. 423 (H.B. No. 315), which had an effective date of July 1, 2024.[56]

Second, Latimore states that her Petition is not facially prescribed because Defendants maintained continuous and frequent contact, resulting in a tacit acknowledgment of the liability and thus prescription was interrupted.[57]

Third, Latimore states that her Petition is not facially prescribed because she filed an incidental demand, which is an exception to the tolling of prescription.[58] Latimore avers that this exception allows her "amendment to the original Petition for Damages, [to] relate[] back to the original filing date of September 20, 2024," pursuant to Louisiana Code of Civil Procedure Article 1153.[59]

Defendants state it is an undisputed fact that "Latimore has not filed any pleadings in the *James Britt* matter."[60] Latimore disputes this and states she filed a cross-claim in the *Britt* matter on April 25, 2025.[61]

---

[55] *Id.* at ¶ 5 (citing Exhibit "A" to Memorandum in Support of Motion, Petition and Clerk's filing stamp on top of first page, and Plaintiff's admission of same, R. Doc. 11, p. 9).
[56] R. Doc. 42, ¶ 5 (citing R. Doc. 37-1).
[57] *Id.* (citing R. Doc. 37, Exhibit 1 (24-2746)).
[58] *Id.* (citing R. Doc. 16 (25-531) and R. Doc. 39 (24-2746)).
[59] *Id.* (citing R. Doc. 37, p. 16 (24-2746)).
[60] R. Doc. 34-3 at p. 1 (24-2746).
[61] R. Doc. 42 at p. 2 (24-2746).

Defendants state it is an undisputed fact that "Defendants have not informed Latimore that they admit liability or will not contest liability."[62] Latimore disputes this is an undisputed fact and maintains that Defendants have tacitly acknowledged the liability "via continual and frequent communications throughout the prescriptive period," and states that Defendants have not explicitly denied or disputed liability to Latimore.[63]

## LAW AND ANALYSIS

### I. The prescriptive period was not interrupted by the July 1, 2024 change in the law.

In their motion for summary judgment, Defendants argue they are entitled to summary judgment because Latimore's claim was subject to a one-year prescriptive period and thus Latimore's claim is time barred.[64] Latimore argues summary judgment is inappropriate here because her claim is not prescribed. Latimore argues that because Louisiana Civil Code article 3492 was repealed during the running of her prescriptive period, the only remaining article that applied was Louisiana Civil Code article 3499, which provided her a prescriptive period of ten years.[65] This Court rejects Latimore's argument.

Prior to July 1, 2024, the liberative prescriptive period for delictual actions in Louisiana was one year.[66] In the 2024 Regular Session of the Louisiana State Legislature, House Bill No. 315, Act No. 423 was enacted.[67] This Act "repeal[ed Louisiana] Civil Code Article[] 3492" and changed the liberative prescription period for delictual actions from

---

[62] R. Doc. 34-3 at p. 2 (24-2746).
[63] R. Doc. 42 at p. 3 (24-2746).
[64] R. Doc. 34-1 at pp. 8-9.
[65] R. Doc. 37 at p. 8.
[66] LA. C.C. ART. 3492 (repealed by Acts 2024, No. 423, § 2, eff. July 1, 2024).
[67] *See generally* 2024 Regular Session, House Bill No. 315, Act No. 423, https://www.legis.la.gov/legis/ViewDocument.aspx?d=1381901 (last visited May 28, 2025).

9

one year to two.[68] The Act also expressly provided for a "prospective application only and [that it] shall apply to delictual actions arising after the effective date of this Act"[69] on July 1, 2024.[70] The new law now establishes that "[d]elictual actions are subject to a liberative prescription of two years. This prescription commences to run from the day that injury or damage is sustained."[71]

In *Parker v. Chet Morrison Contractors, LLC*, another section of this Court analyzed whether a claim was prescribed when Parker filed a negligence action in September 2023 against his employer for a "near-drowning incident" that occurred over ten years prior in February 2013.[72] After noting that the new law applies only prospectively and "its two-year prescriptive period 'shall apply to delictual actions arising *after* the [July 1, 2024] effective date of [Act 423]," the Court held that "[b]ecause the alleged facts underlying Parker's negligence claim *occurred before July 1, 2024, the former Article 3492 and its one-year prescriptive period apply.*"[73]

There are no disputes of material fact with respect to this argument. It is undisputed that Latimore's car accident occurred on September 2, 2023.[74] Instead, Latimore makes an argument based on Louisiana law. Because the accident occurred on September 2, 2023, it follows that the facts underlying Latimore's claim (i.e. the date of the accident) occurred prior to the July 1, 2024 effective date of Act No. 423. As the statute and the *Parker* case made clear, the two-year prescriptive period applies only to

---

[68] *Id.*
[69] *Id.* at § 3.
[70] *Id.* at § 4.
[71] La. C.C. art. 3493.11.
[72] *Parker v. Chet Morrison Contractors, LLC*, No. CIV.A 23-5122, 2024 WL 3970312 at *2-3 (E.D. La. Aug. 28, 2024).
[73] *Id.* at *5 (emphasis added).
[74] R. Doc. 42 at ¶ 1.

10

delictual actions arising after July 1, 2024.[75] There is no support for an argument that a ten-year prescriptive period applies.[76] In the instant case, the facts underlying the negligence claim occurred on September 2, 2023, which is before the new law's effective date of July 1, 2024. Thus, Latimore is restricted to the one-year prescriptive period. To rule otherwise would result in a retroactive application that is unsupported by law or jurisprudence.

## II. Latimore's prescriptive period was not interrupted.

In their motion for summary judgment, Defendants argue it is an undisputed fact that they did not provide continuous and frequent contact with Latimore that rose to the level of tacit acknowledgment.[77] Conversely, Latimore disputes this is an undisputed fact and argues the three emails from defense counsel do indeed rise to such a level, resulting in her prescription period being interrupted.[78] In reality, there is no dispute as to the extent or nature of communications between Latimore and defense counsel. Instead, the issue is whether under Louisiana law these communications rise to the level of a tacit acknowledgement sufficient to interrupt prescription.

Absent a federal rule of civil procedure expressly stating to the contrary, the *Erie* doctrine controls how federal courts determine statutes of limitations – known as prescriptive periods in Louisiana. "Under the *Erie* doctrine, federal courts sitting in diversity [jurisdiction] apply state substantive law and federal procedural law."[79] It has been repeatedly held that "[s]tate statutes of limitations are [considered] substantive

---

[75] *Parker v. Chet Morrison Contractors, LLC*, 2024 WL 3970312 at *5.
[76] *See generally id.*
[77] R. Doc. 34-1 at p. 10 (24-2746).
[78] R. Doc. 37 at pp. 10-11 (24-2746).
[79] *Quinn v. La. Citizens Prop. Ins. Corp.*, 118 So. 3d 1011, 1019 n.12 (La. 2012) (citing *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996)); *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938).

11

law."[80] Thus, "federal courts [with diversity jurisdiction must] apply state statutes of limitations to state-law claims."[81] In the instant case, there is no federal rule of civil procedure expressly stating the statute of limitations for tort claims – known as delictual actions in Louisiana. Thus, because this Court has diversity jurisdiction over this matter, and because prescriptive periods are considered substantive law rather than procedural, this court is required to apply Louisiana's prescription laws.

"Liberative prescription is a mode of barring actions as a result of inaction for a period of time."[82] Prescription statutes must be interpreted in favor of keeping the action alive, rather than barring it.[83] "The burden of proving prescription ordinarily lies with the party raising the exception; however, when prescription is evident from the face of the petition, the burden shifts to the plaintiff to show the action has not prescribed."[84] One way a plaintiff may meet this burden is by showing prescription was interrupted.[85] "The party claiming interruption . . . bears the burden of proving that interruption . . . occurred."[86] "Interruption of prescription must occur before the prescriptive period has expired."[87] In the instant case, because the accident occurred on September 2, 2023 and

---

[80] *Wilson v. Hearos, LLC*, 128 F.4th 1254, 1264 (11th Cir. 2025).
[81] *Franco v. Mabe Trucking Co., Inc.*, 3 F.4th 788, 797 (citing *Guaranty Trust Co. of New York v. York*, 326 U.S. 99, 111-12 (1945)).
[82] LA. C.C. ART. 3447.
[83] *Lima v. Schmidt*, 595 So. 2d 624, 629 (La. 1992) (overruled on other grounds) (citing *Foster v. Breaux*, 270 So. 2d 526 (1972)); *Knecht v. Board of Trustees for Colleges and Universities*, 525 So. 2d 250 (La. Ct. App. 1st Cir.), *writ denied*, 530 So. 2d 87 (La. 1988); *Odessa House v. Goss*, 453 So. 2d 299 (La. Ct. App. 3rd Cir. 1984)).
[84] *In re Maison Royale*, 663 B.R. 316, 322 (E.D. La. June 18, 2024) (quoting *Mitchell v. Baton Rouge Orthopedic Clinic, L.L.C.*, 333 So. 3d 368 (La. 2021); *see also Lima*, 595 So. 2d at 628 ("When the plaintiff's petition on its face reveals that prescription has run, the burden is on the plaintiff to show why the claim has not prescribed."); *Mallett v. McNeal*, 939 So. 2d 1254, 1258 (La. 2006) ("The burden of proof on the prescription issue lies with the party asserting it unless the plaintiff's claim is barred on its face, in which case the burden shifts to the plaintiff.") (citing *Bailey v. Khoury*, 891 So. 2d 1268, 1275 (La. 2005)).
[85] *Lima v. Schmidt*, 595 So. 2d at 628.
[86] *In re Maison Royale*, 663 B.R. at 322 (citing *Taranto v. La. Citizens Prop. Ins. Corp.*, 62 So. 3d 721, 726 (La. 2011)).
[87] *Id.* at 326 (citing *Reynolds v. Walgreen Co.*, 342 So. 3d 975, 984 (La. Ct. App. 1st Cir. 2022), *writ denied*, 348 So. 3d 79 (La. 2022).

Latimore did not file her suit until September 20, 2024, more than one year after the accident, Latimore's claim has prescribed on its face. Thus, the burden of proof rests with Latimore to show that her claim has not prescribed.

"Prescription is interrupted when one acknowledges the right of the person against whom he had commenced to prescribe."[88] An acknowledgment sufficient to interrupt a prescriptive period "erases the time that has accrued, [and] prescription recommenc[es] anew from the date of interruption."[89] There is no form requirement for an acknowledgment to occur – it can be "oral, in writing, formal, informal, express or tacit. . . . If the acknowledgment is tacit, it is necessary to ascertan that the alleged facts imply a *definite* admission of liability."[90]

Louisiana jurisprudence has provided several examples of what constitutes a tacit acknowledgment, including "when a debtor performs acts of reparation or indemnity, makes an unconditional offer or payment, or lulls the creditor into believing he will not contest liability."[91] Other evidence of a tacit acknowledgment includes "undisputed liability, repeated and open-ended reassurances of payment, and continuous and frequent contact with the creditor throughout the prescriptive period."[92] On the other hand, "mere settlement offers or conditional payments, humanitarian or charitable gestures, and recognition of disputed claims will not constitute acknowledgments."[93]

---

[88] LA. C.C. ART. 3464.
[89] *Lima v. Schmidt*, 595 So. 2d at 631 (citing Comment, *Interruption of Prescription by Acknowledgment in Louisiana*, TUL. L. REV. 430 (1940)); *see also* LA. C.C. ART. 3466 ("If prescription is interrupted, the time that has run is not counted. Prescription commences to run anew from the last day of interruption.").
[90] *Bates v. City of Denham Springs*, 367 So. 3d 102, 107 (La. Ct. App. 1st Cir. 2023) (emphasis added) (citing *Safeco Ins. Co. v. Norcold, Inc.*, 113 So. 3d 1104, 1107 (La. Ct. App. 1st Cir. 2013)).
[91] *Lima v. Schmidt*, 595 So. 2d at 634; *see also In re Maison Royale*, 663 B.R. at 327.
[92] *Id.*
[93] *Id.*

In *Safeco Ins. Co. v. Norcold, Inc.*, the Louisiana First Circuit Court of Appeal analyzed whether prescription was interrupted by a defendant's tacit acknowledgment of a debt evidenced by several emails.[94] Specifically, defendant's emails asserted that "[o]nce [Defendant] ha[s] negotiated the settlements and releases, [Plaintiff] will receive the checks," and defendant would "like to get this one moving towards settlement due to the one year statute of limitations that will run in May."[95] Defendant also sent a couple of emails inquiring about the status of the matter.[96] The Louisiana First Circuit Court of Appeal held that the defendant did not tacitly acknowledge the debt to plaintiff, and thus prescription had not been interrupted.[97] Specifically, the court focused on how a settlement offer was never actually made, it was just merely mentioned.[98] The court emphasized that just because Defendant "intended and was willing to discuss settlement with [Plaintiff] . . . [Defendant's] statements and actions failed to manifest a definite admission of liability to [Plaintiff]."[99] Even if a settlement offer had been made, "the law is clear that settlement offers do not evidence an acknowledgment unless the offer is tendered unconditionally."[100]

Similarly, in *Gray v. State Farm Fire & Casualty Co.*, the Western District of Louisiana analyzed the same issue. In that case, the plaintiff argued that several emails "led him to believe [Defendant] would not contest liability."[101] The emails requested additional information from the plaintiff and offered to schedule a mediation twice.[102]

---

[94] *See generally Safeco Ins. Co.*, 113 So. 3d 1104.
[95] *Id.* at 1108.
[96] *Id.*
[97] *Id.*
[98] *Id.*
[99] *Id.* at 1109.
[100] *Id.* at 1108.
[101] *Gray v. State Farm Fire & Cas. Co.*, No. 23-1053, 2025 WL 1213860, at *3-4 (W.D. La. Apr. 25, 2025).
[102] *Id.* at *4.

14

The court held these emails did not prove an "acknowledg[ment of Defendant's] liability" sufficient to interrupt prescription.[103]

In *Mire v. American Multi-Cinema, Inc.*, another section of this court analyzed this issue.[104] In *Mire*, the defendant "requested medical bills and a Medicare form," which was necessary for settlement evaluation purposes.[105] The court held defendant's "actions of requesting information . . . [did] not rise to the level of acknowledging the alleged debt."[106]

In this matter, several communications were exchanged between counsel for Latimore and counsel for Defendants over the course of approximately five months.[107] The substance of the emails was the following:

> (1) November 20, 2023: Defense counsel left a voicemail for Latimore's counsel asking to discuss the accident and medical status of Latimore.[108]
>
> (2) November 29, 2023: Defense counsel emailed Latimore's counsel regarding same.[109]
>
> (3) November 30, 2023: Latimore's counsel returned defense counsel's call and left a voicemail stating that medical records would be forwarded when received.[110]
>
> (4) December 21, 2023: Latimore's counsel's legal assistant emailed medical records to defense counsel.[111]

---

[103] *Id.*
[104] *See generally Mire v. American-Multi-Cinema, Inc.*, No. 14-2582, 2015 WL 5682621 (E.D. La. Sept. 25, 2015).
[105] *Id.* at *3.
[106] *Id.* at *4.
[107] R. Doc. 37 at pp. 10-11; *see also* R. Doc. 34-1 at p. 10 (24-2746).
[108] R. Doc. 37 at p. 10 (24-2746); R. Doc. 37-9 (24-2746); R. Doc. 34-1 at p. 10 (24-2746).
[109] *Id.*
[110] R. Doc. 37 at p. 10 (24-2746); R. Doc. 34-1 at p. 10 (24-2746).
[111] *Id.*; R. Doc. 37-10 (24-2746).

15

(5) January 16, 2024: Latimore's counsel emailed defense counsel a treatment update.[112]

(6) March 1, 2024: Defense counsel emailed Latimore's counsel asking whether treatment (i.e. injections) was done.[113] Latimore's counsel responded that injections were performed and that medical records would be sent when available.[114]

(7) March 5, 2024: Latimore's counsel's legal assistant emailed medical records to defense counsel.[115]

(8) April 3, 2024: Defense counsel emailed Latimore's counsel asking for a settlement demand.[116]

The emails Latimore contends are "continuous and frequent" contact that resulted in a tacit acknowledgment of the debt are similar to those in *Safeco*, *Gray*, and *Mire*, as discussed above. First, the November 20, 2023 voicemail and the November 29, 2023 follow-up email, by themselves, do not amount to a tacit acknowledgment. As the *Mire* court reasoned, merely discussing the facts and requesting medical records is not sufficient to tacitly acknowledge liability. Second, the March 1, 2024 email cannot constitute a tacit acknowledgment for the same reason. Finally, the April 3, 2024 email regarding the settlement demand does not rise to the level of a tacit acknowledgment for reasons described in *Safeco*. Even though a settlement demand was asked for, an offer was never provided, much less unconditionally, and therefore is not a definite admission of liability. The communications in *Safeco*, *Gray*, and *Mire* come much closer to being

---

[112] R. Doc. 37 at p. 10 (24-2746); R. Doc. 37-11 (24-2746); R. Doc. 34-1 at p. 10 (24-2746).
[113] R. Doc. 37 at p. 10 (24-2746); R. Doc. 37-12 (24-2746); R. Doc. 34-1 at p. 10 (24-2746).
[114] R. Doc. 37 at p. 10 (24-2746); R. Doc. 37-13 (24-2746); R. Doc. 34-1 at p. 10 (24-2746).
[115] R. Doc. 37 at p. 11 (24-2746); R. Doc. 37-14 (24-2746); R. Doc. 34-1 at p. 10 (24-2746).
[116] R. Doc. 37 at p. 11 (24-2746); R. Doc. 37-15 (24-2746); R. Doc. 34-1 at p. 10 (24-2746).

16

tacit acknowledgments than the communications in this case. Instead, in this case, Defendants merely recognized a disputed claim. Latimore's argument that Defendants never explicitly denied liability[117] is without merit as that does not equal tacit acknowledgment under Louisiana jurisprudence. Additionally, this Court agrees with Defendants that these communications, taken together, "can hardly be described as continuous or frequent."[118]

### III. Latimore's Petition and Amended Complaint do not relate back to Britt's original demand.

In Latimore's First Amended Complaint, filed on April 7, 2025, she represents that her amended complaint should be construed as an intervention into the *Britt* suit.[119] Based on this premise, Latimore argues in her opposition to the motion for summary judgment that her amended complaint in the Latimore action is an "intervention" in the Britt action and as a result is an incidental demand and not barred by prescription pursuant to Louisiana Code of Civil Procedure Article 1067.[120] In their motion for summary judgment, Defendants argue that Latimore's Petition and Amended Complaint in the Latimore action is not an incidental demand in the *Britt* matter and thus cannot be construed as an intervention in the Britt action.[121] Again, the facts relating to this argument are not in dispute. Instead, the legal issue is whether Latimore's amended petition in the Latimore action may be construed as an intervention in the *Britt* action. The Court finds that it may not.

---

[117] *Id.* at p. 12 (24-2746).
[118] R. Doc. 34-1 at p. 10.
[119] R. Doc. 16, p. 3 (25-531).
[120] R. Doc. 37 at p. 14 (24-2746). The Federal Rules of Civil Procedure are applicable "to a civil action after it is removed from a state court."[120]  Thus, Latimore's entire argument rooted in Louisiana law is inapplicable.
[121] R. Doc. 34-1 at p. 14 (24-2746).

Under Federal Rule of Civil Procedure 15(c)(1)(B), "[a]n amendment [may] relate[] back to the date of the original pleading when the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out . . . in the original pleading,"[122] Latimore's Amended Petition in the Latimore action may relate back, but *only* to her own original Petition in the Latimore action. Given that Latimore's original Petition was untimely, Latimore's Amended Complaint relating back to that date does not render her filing timely. Rule 15(g) applies only to an amendment to a pleading already filed, not a new cross-claim. Nothing in Rule 15, nor anywhere else in the Federal Rules of Civil Procedure for that matter, grants Latimore the opportunity to fix her untimeliness by having her amended petition in the Latimore action relate back to the timely complaint filed in the Britt action.

Accordingly;

## CONCLUSION[123]

**IT IS ORDERED** that Defendants' Motion for Summary Judgment[124] is **GRANTED**.

**New Orleans, Louisiana, this 11th day of June, 2025.**

_____
**SUSIE MORGAN
UNITED STATES DISTRICT JUDGE**

---

[122] FED. R. CIV. P. 15(c)(1)(B).
[123] Defendants filed a "Motion to Dismiss [Latimore's] Cross Claim – Prescription" and a "Motion to Dismiss [Latimore's] Cross Claim – No Right to Maintain Two Actions" on May 28, 2025 in the consolidated action, No. 24-2746. R. Doc. 55; R. Doc. 56. Pursuant to this Order, the Court has granted summary judgment in favor of Defendants and found Latimore's claims are prescribed. Thus, the motions are **DENIED AS MOOT.** R. Doc. 55; R. Doc. 56.
[124] R. Doc. 34 (24-2746).